NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0405n.06
Filed: June 15, 206

No. 04-4195

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| PASHK HAJDARI, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) ) | PETITION FOR REVIEW OF A DECISION OF THE BOARD OF IMMIGRATION APPEALS |
| ALBERTO GONZALES, Attorney General of the United States, | ) ) ) | |
| Respondent. | ) ) ) | |

Before: CLAY, COOK Circuit Judges; COOK, District Judge.[*]

COOK, District Judge. Pashk Hajdari petitions this Court for its review of a decision by the Board of Immigration Appeals ("Board") which affirmed the denial of his application for (1) asylum under section 208(a) of the Immigration and Nationality Act ("INA"), 8 USC § 1158(a), and (2) withholding of removal pursuant to section 241(b)(3) of the INA, 8 § U.S.C. 1231(b)(3). For the following reasons, the petition is denied.

I.

In 1988, the Petitioner entered the United States in Detroit, Michigan without a valid immigrant visa. Two years later, he filed an application for administrative asylum and the

---

[*]The Honorable Julian Abele Cook, Jr., United States District Judge for the Eastern District of Michigan, sitting by designation.

withholding of his deportation.[1] His request was denied on January 28, 1997. Several days later (February 7, 1997), the Immigration and Naturalization Service filed an "Order to Show Cause and Notice of Hearing," in which the Petitioner was charged with being removable under section 241 (a)(1)(B) of the INA, 8 U.S.C. § 1231(a)(1)(B) because of his unauthorized entry into the United States as an immigrant. During a master calendar hearing, he acknowledged the accuracy of the factual allegations within the Order of February 7th and conceded the charge of deportability. On August 13, 1997, the Petitioner filed a supplemental application for asylum and the withholding of removal, which was subsequently denied by the immigration judge. In rendering the decision, the immigration judge concluded that the Petitioner had failed to (1) provide credible support for this asylum claim, and (2) satisfy his burden of demonstrating that it was more likely than not that he would be persecuted or tortured if the United States Government returned him to Yugoslavia. On September 3, 2004, the Board affirmed the immigration judge's decision without an opinion, pursuant to 8 C.F.R. § 1003.1(e)(4).

II.

According to the United States Code, "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. §1252(b)(4)(B) (2005). Where, as here, the Board adopts the reasoning of the immigration judge, we review the opinion of the immigration judge directly. *Denko v. INS*, 351 F.3d 717, 726 (6th Cir.

---

[1]Because the Petitioner filed his first application prior to April 1, 1997, he applied for "withholding of deportation." *See* 8 C.F.R. § 208.1 ("For purposes of this chapter, withholding of removal shall also mean withholding deportation under section 243(h) of the Act, as it appeared prior to April 1, 1997. . . .")

2003). The factual determinations of an immigration judge, including an adverse credibility finding, *Yu v. Ashcroft,* 364 F.3d 700, 703 (6th Cir. 2004), as well as the determination that an applicant had failed to satisfy his burden of establishing eligibility for an asylum or withholding of removal, *Koliada v. INS*, 259 F.3d 482, 486 (6th Cir. 2001) must be upheld if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* 259 F.3d 482, 486 (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (internal quotation omitted)). Our role, as an appellate court, is not to reverse the decision solely because we would have decided the case differently. *Mikhailevitch v. INS*, 146 F.3d 384, 388 (6th Cir. 1998) (citing *Klawitter v. INS,* 970 F.2d 149, 151-152 (6th Cir. 1992)). Rather, in order to reverse the immigration judge, we must first find evidence, if it exists, that not only supports a contrary conclusion, but compels it. *Koliada*, 259 F.3d at 486.

### III.

According to 8 U.S.C. § 1158(b)(1) (2005), the Attorney General is possessed with authority under the INA to grant asylum to an immigrant who is determined to be a "refugee." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 428 (1987); *Koliada*, 259 F.3d at 486. A "refugee" is defined under the law as including a person who is unable or unwilling to return to his native country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . ." 8 U.S.C. § 1101(a)(42)(A) (2005).

The determination of whether to grant or deny a request for asylum involves a two-step

inquiry. First, an applicant bears the burden of demonstrating the existence of past persecution or a well-founded fear of future persecution. *Yu,* 364 F.3d at 703; 8 C.F.R. § 208.13(a). Second, the applicant must demonstrate that he "merits a favorable exercise of discretion by the Attorney General." *Ouda v. INS*, 324 F.3d 445, 451 (6th Cir. 2003) (quotation omitted). However, the credible testimony of an asylum applicant may be sufficient to sustain the burden of proof without further corroboration. *Id.* at 451-52; 8 C.F.R. § 208.13(a) (2005).

According to the immigration judge in this case, there were several inconsistencies between the Petitioner's testimony during the hearing, the information that was provided by him during his asylum interview, and the documentary evidence that was introduced into the record during the evidentiary hearing. First, the immigration found some discrepancies between the Petitioner's testimony regarding his involvement in the arrest of demonstrating Albanian nationals and the information that was given by him during the asylum interview. During his asylum interview, the Petitioner acknowledged that he had arrested and transported ethnic Albanian "freedom and democracy" demonstrators on at least five occasions. Yet during the administrative hearing before the immigration judge, he denied ever having been involved in any of the arrests. As a result, the immigration judge found his testimony (to wit, that he, despite being a federal police officer who was present during political demonstrations, had refrained from arresting or beating anyone) to lack credibility. Second, the immigration judge found that the Petitioner had provided inconsistent testimony regarding the dates and the length of his service in the Yugoslavian military. During the hearing, it was the Petitioner's contention that he had served in the Yugoslavian army for a two year period from 1976 until 1977. However, his military records indicated that he had served from

4

1976 until 1981.

The Petitioner also submits that he was tried in abstentia in 1989 by a Yugoslavian court for leaving his position as a prison guard, found guilty, and sentenced to ten years in prison. The immigration judge placed virtually no reliance upon the document that had been submitted by him to prove this claimed prosecution because it was unauthenticated and failed to comply with Immigration and Naturalization Service regulations which relate to the authentication of documents. Furthermore, the immigration judge determined that the Petitioner had failed to provide a basis upon which it could be determined with any reasonable degree of assurance that the document had been obtained from the official Yugoslavian governmental offices.

Based upon these discrepancies, the immigration judge concluded that the Petitioner had failed to proffer credible testimony to satisfy his burden of proof for an asylum claim. We find that substantial evidence supports the immigration judge's adverse credibility determination.

IV.

According to established law, if an applicant satisfies his burden of establishing past persecution, he is presumed to have established a well-founded fear of future persecution as well. *Ouda*, 324 F.3d at 452; 8 C.F.R. § 208.13(b)(1). In this case, the Petitioner does not claim that he suffered past persecution in Yugoslavia. Thus, our focus will be on whether he has established a well-founded fear of future persecution.[2]

_____

[2]Although the Petitioner asserts that the immigration judge "erred . . . by determining that the harm [which was suffered by him] did not rise to the level of persecution," he fails to make a developed argument on this point. Accordingly, we will not address this issue on appeal. *See*

The phrase, "well-founded fear of persecution," includes a subjective, as well as an objective, component. *Cardoza-Fonseca*, 480 U.S. at 430-31; *Perkovic v. INS*, 33 F.3d 615, 620-21 (6th Cir. 1994). Thus, an applicant must (1) actually fear that he will be persecuted upon return to his native country, and (2) proffer evidence which establishes that this fear is objectively reasonable. *Id.* at 620-21. Furthermore, he must be able to demonstrate "that the feared persecution would be on account of his race, religion, nationality, membership in a particular social group, or political opinion." *Id.* at 621 (quoting *Matter of Mogharrabi*, 19 I & N Dec. 439, 447 (BIA 1987) (emphasis removed)).

Here, the Petitioner maintains that he will be persecuted upon his return to Yugoslavia because of his (1) political views, (2) Albanian ethnicity, (3) unexcused absence from service as a federal prison guard, (4) unauthorized departure from Yugoslavia, and (5) refusal to follow orders to arrest demonstrating ethnic Albanians. After consulting the Yugoslavian Country Reports, the immigration judge determined that conditions in his country had changed significantly since October 2000 when its leader, Slobodan Milosevic, lost power. These Reports indicated that human rights conditions had improved. Furthermore, the immigration judge learned that the Petitioner's conviction and sentence had ensued from his violation of the Yugoslav Code, such as ruining the reputation of the country. Under the Milosevic regime, these violations were common

---

*United States v. Crozier*, 259 F.3d 503, 517 (6th Cir. 2001) ("issues adverted to [on appeal] in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived") (quotation omitted) (alteration in original).

rationales for imprisoning nearly two thousand ethnic Albanians. However, with Milosevic no longer in power, the record does not support the Petitioner's belief that his conviction remains in effect and will be enforced. The Country Report also indicated that the Yugoslavian Constitution provided for the right to free foreign and domestic travel for all citizens, including ethnic Albanians. Under such circumstances, the immigration judge concluded that there was no longer a reasonable probability that the Petitioner would be persecuted upon his return to Yugoslavia. Thus, on the basis of the substantial evidence in the record, we find that the immigration judge properly determined that the Petitioner failed to establish a well-founded fear of future persecution.

However, even if the Petitioner had testified credibly about facing prosecution and imprisonment, the immigration judge correctly concluded that his punishment did not rise to the level of persecution. Notwithstanding the Petitioner's arguments to the contrary, he has failed to establish that this criminal prosecution was merely a pretext for persecution which, in turn, was based upon his political views or Albanian ethnicity.

V.

A request for asylum in a deportation proceeding is automatically deemed to include a request to withhold removal. 8 C.F.R. § 208.3(b) (2005). Significantly, the burden of proof for a withholding of removal claim is higher than that of an asylum claim. The clear probability of persecution standard governs the determination of requests for withholding of removal. *Gumbol v. INS*, 815 F.2d 406, 409 (6th Cir. 1987). Under this standard, an applicant must demonstrate that it is more likely that not that he will be subjected to persecution if forced to return to his native land. *Id.* at 411 (quotation omitted).

7

The "clear probability" standard is stricter than the "well-founded fear of persecution" standard that is utilized in asylum cases. *See Cardoza-Fonseca*, 480 U.S. at 430-31; *Gumbol*, 815 F.2d at 412. Thus, a candidate who does not satisfy the eligibility requirement for a grant of asylum necessarily fails to meet the more stringent standards required for withholding of removal relief. *Koliada*, 259 F.3d at 489.

## VI.

The Petitioner is also statutorily ineligible for asylum and the withholding of removal because of his assistance in the persecution of others. The burden of proof is upon the applicant to demonstrate that he is considered to be a "refugee," as defined by section 101(a)(42) of the INA, 8 U.S.C. § 1101(a)(42) (2005). "The term 'refugee' does not include any person who had ordered, incited, assisted, or otherwise participated in the persecution of any person on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id*. However, those applicants, who engaged in such misconduct, are ineligible for a grant of asylum or withholding of removal. 8 U.S.C. § 1158(b)(2)(A)(I); 8 U.S.C. § 1231 (b)(3)(B)(I) (2005).

When determining whether an individual "assisted" in the persecution of others, it was our opinion several years ago that it is important to focus on the conduct of the applicant. *United States v. Dallide*, 227 F.3d 385, 390 (6th Cir. 2000) (quoting *Fedorenko v. United States*, 449 U.S. 490, 512 (1981)). Mere membership in an enemy group is an insufficient basis upon which to constitute "assistance" in persecution. *Fedorenko*, 449 U.S. at 513-14. On the other hand, we, in *Dallide*, determined that even involuntary conduct may be considered as providing "assistance" to another.

8

*Id.* The determination as to whether an individual's conduct should be considered as giving "assistance" to the persecution of other persons must be determined on a case by case basis with reference to the relevant facts. *Dallide*, 227 F.3d at 391 (citing *Fedorenko*, 449 U.S. at 513-14). Personal involvement in atrocities need not be proven by the United States Government. *Hammer v. INS*, 195 F.3d 838, 843-44 (6th Cir. 1999).

In this case, the immigration judge correctly concluded that the Petitioner had furthered the persecution of ethnic Albanians, reasoning that he was a high ranking officer whose duties included the arrest and transportation to prison of demonstrating ethnic countrymen. Additionally, the immigration judge also noted that the Petitioner (1) was responsible for the apprehension and the return of those political prisoners who had escaped their imprisonment, and (2) had participated in the persecution of ethnic Albanians without actually causing their deaths.

The burden is upon the Petitioner, under the preponderance of evidence standard, to prove that he did not persecute ethnic Albanians. 8 C.F.R. § 208.13(c)(2)(ii) (2005). Since the record demonstrates that his orders included arresting, beating, and perhaps shooting or killing, if necessary, ethnic Albanians, there is substantial evidence which supports the findings of the immigration judge that the Petitioner did not meet his burden of demonstrating that he was not a persecutor. Consequently, he is statutorily ineligible for asylum and the withholding of removal because of his participation in the past persecution of others.

VII.

In order to establish an entitlement to the withholding of removal under the United Nations Convention Against Torture (UNCAT), an applicant must show that "it is more likely than not that

9

he . . . would be tortured if removed to the proposed country of removal." *Ali v. Reno*, 237 F.3d 591, 596 (6th Cir. 2001) (citing 8 C.F.R. § 208.16(c)(2) (2005)). Furthermore, we, as an appellate court, must uphold the determination of the immigration judge against the withholding of removal of an immigrant unless such a decision would be manifestly contrary to the law. *Castellano-Chacon v. INS,* 341 F.3d 533, 552 (6th Cir. 2003).

In this case, the immigration judge entered an order on July 23, 1999, in which she notified the Petitioner that a hearing had been scheduled for him on November 11, 1999. The immigration judge also indicated that if the Petitioner intended to assert a claim pursuant to UNCAT, he should file an application for such relief, along with the pertinent supporting evidence, approximately fourteen days prior to the date of the scheduled hearing.

As a preliminary step, an applicant must exhaust all of his administrative remedies before filing an appeal. *Juarez v. INS*, 732 F.2d 58, 59 (6th Cir. 1984). However, there is nothing in this record which indicates that such an application had ever been filed by the Petitioner. As a consequence, it is our conclusion that he has waived his right to be considered for relief under UNCAT.

VIII.

In summary, there is substantial evidence which supports the determination by the immigration judge that the Petitioner had failed to establish that he would be persecuted if made to return to Yugoslavia. He has also failed to demonstrate the existence of a well- founded fear of future persecution. Moreover, the Petitioner's failure to file appropriate documentation in support of his request pursuant to UNCAT has resulted in a waiver of his right to be considered for relief

under this statute.

Accordingly, we will neither disturb the immigration judge's denial of the Petitioner's application for asylum and withholding of removal nor grant his petition for review.

**CLAY, Circuit Judge, concurring.** I agree with the conclusion of the majority opinion and most of the underlying analysis. I write separately only to raise one point with respect to whether Petitioner is statutorily ineligible for asylum due to his participation in the persecution of ethnic Albanians. The majority opinion finds substantial evidence to support the Immigration Judge's ("IJ") finding of such ineligibility in the fact that Petitioner received orders that included arresting, beating, and even shooting or killing ethnic Albanians. The IJ, however, did not rely on this fact alone, as Petitioner denies ever following such orders. The IJ based her decision on the ground that she did not believe that Petitioner did not follow these orders; the IJ reasoned, and I agree, that had Petitioner not followed these orders, he would not have been able to remain at his position as a guard for ten months. Petitioner claims he was first given these orders in February 1988 but refused to follow them. Petitioner, however, was able to continue working until December 1988, when he left Yugoslavia. The fact that Petitioner received these orders of persecution, *coupled* with the fact that Petitioner was able to continue in his employment as a guard, support the IJ's finding that Petitioner engaged in persecution.

I concur in all other respects with the majority opinion.