NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0919n.06
Filed: November 18, 2005

No. 04-3998

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

VALBONA XHELAL LAKAJ; SOKOL )
LAKAJ; XHESIANA LAKAJ, )
)
    Petitioners, )
)
v. ) ON APPEAL FROM THE
) BOARD OF IMMIGRATION
Alberto Gonzales, ) APPEALS
)
    Respondent. )

BEFORE:    KEITH, SUHRHEINRICH, and CLAY, Circuit Judges.

    **DAMON J. KEITH, Circuit Judge**. Petitioners Valbona Xhelal Lakaj, Sokol Lakaj, and Xhesiana Lakaj seek petition for review of the Order of the Board of Immigration Appeals affirming, without opinion, the Order of the immigration judge denying their application for asylum, withholding of removal, and protection under the U.N. Convention Against Torture. For the following reasons set forth below, we **DENY** the petition for review.

**I. BACKGROUND**

    Valbona Xhelal Lakaj, her husband, Sokol Lakaj, and daughter, Xhesiana Lakaj, (collectively, the "Lakajs" or "Petitioners"), were born in Albania. The lead petitioner, Valbona Lakaj, was born in an internment camp where her father was held due to his political opposition to the Albanian Communist Regime. Once the Communist Party was overthrown in 1991, Ms. Lakaj joined the Anticommunist Political Association for the Formerly Prosecuted. In 1995, Ms. Lakaj

gained employment as an archivist in the Office of the President of Albania. She worked there until 1999.

While she was employed in the Office of Archives for the President of Albania, Ms. Lakaj was asked by Mr. Adem Cobani, the President of Albania's Military Adviser and later Head of the Joint Chiefs of Staff, to notarize a top secret document without reviewing it. Her action, she testified, was in violation of official government protocol. Ms. Lakaj claimed that she objected to notarizing the document without first reviewing its contents; however, she complied with the request of Mr. Cobani, once he threatened her life.

In 1997, the District Attorney in Tirana, the capital of Albania, began an investigation into the operations of the military. This investigation, which is still pending, led to indictment of Mr. Cobani for crimes against the People of Albania because he allegedly authorized the Army to use chemical weapons against citizens in certain Albanian cities. Mr. Cobani fled the country before he was arrested.

The District Attorney's Office began investigating Ms. Lakaj in connection with the Cobani indictment. She was interviewed several times over two years, with the last interview occurring in either March or April of 1999. In Ms. Lakaj's asylum application, she stated that the District Attorney's Office told her that she would be indicted for participating in illegal activities – notarizing a government document without knowing the contents. Apparently, the document she notarized authorized the use of chemical warfare against the citizens of Albania.

Ms. Lakaj obtained an Albanian passport in April 1999. On October 4, 1999, she traveled to the American consulate in Istanbul, Turkey. She applied for a visitor's visa and was denied.

Although, Lakaj was under investigation by the District Attorney, she was not arrested or detained at the Albanian border as she departed or returned from her international travels. On November 16, 2000, the Lakajs left Albania, after a friend who worked in her office informed her that a warrant had been issued for her arrest. Lakaj traveled to several countries, where she did not make a claim for political asylum, but instead she eventually made her way to the United States. Using Slovenian passports, the Lakajs entered the United States on November 20, 1999.

Petitioners submitted an application for asylum to the immigration judge ("IJ") on September 14, 2001. The IJ conducted a hearing on the merits on March 31, 2003. After consideration of the documentary and testimonial evidence, the IJ denied Petitioner's application for asylum. In an oral decision, the IJ found that past persecution was established by the Lakajs prior to 1991. The changed country conditions, however, rebutted the presumption of future persecution. The IJ found that the Petitioners did not offer any evidence to demonstrate their current persecution. Specifically, there was no objective basis for fear of future prosecution based on political beliefs. According to the IJ's findings, Ms. Lakaj has only been subjected to an investigation of a crime and "every sovereign nation has a legitimate interest in investigating criminal activity." (J.A. at 23-24).

Petitioners filed a timely notice of appeal with the Board of Immigration Appeals ("BIA"). The BIA affirmed, without opinion, the decision of the IJ. A timely petition for review in this Court follows.

## II.     JURISDICTION

This Court has jurisdiction pursuant to the Immigration and Nationality Act ("I.N.A.") § 1252(b) to review final orders of removal. The BIA's decision affirming the IJ's decision without

an opinion is considered a final agency determination. *See Hasan v. Ashcroft*, 397 F.3d 417, 419

(6th Cir. 2005) (citing 8 C.F.R. § 1003.1(e)(4)(ii)).

## III. ANALYSIS

The Lakajs raise the following two issues on appeal: (1) whether the regulation permitting

the BIA to summarily to affirm the immigration judge's decision without opinion violates the Due

Process Clause of the Fifth Amendment; and (2) whether the immigration judge erred in denying

their application for asylum.

## A. Summary-Affirmance-Without-Opinion Procedure

We begin by addressing Lakaj's claim that the BIA's summary affirmance procedures

deprived her of her Fifth Amendment due process rights. We review *de novo* an alleged due process

violations in removal proceedings. *Denko v. I.N.S.,* 351 F.3d 717, 726 (6th Cir.2003). In 1999, the

Department of Justice established a streamlined appellate review procedure for the BIA. The

applicable regulation is found at 8 C.F.R. § 1003.1(e)(4). The BIA's decision in Lakaj's appeal was

in accordance with this regulation. We recognize that "[i]t is well established that the Fifth

Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores,* 507

U.S. 292, 306, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993). This circuit, however, has held explicitly that

the BIA's streamlining procedures do not violate an alien's due process rights under the Fifth

Amendment. *Denko,* 351 F.3d at 729-30 (6th Cir. 2003). Petitioners must show specific evidence

that the BIA failed to give appropriate consideration to their appeal. Lakaj offers no such evidence.

Therefore, following the reasoning articulated in *Denko,* this claim lacks merit.

## B. Asylum Application

We next address the IJ's denial of Lakaj's application for asylum.[1] Because the BIA issued a summary affirmance, the IJ's decision is the final agency order, and we therefore review the IJ's decision directly. *Denko,* 351 F.3d at 723, 730. An application for asylum "involves a two-step inquiry: (1) whether the applicant qualifies as a 'refugee' as defined in § 1101(a)(42)(A), and (2) whether the applicant merits a favorable exercise of discretion by the [IJ]." *Yu v. Ashcroft,* 364 F.3d 700, 702 (6th Cir. 2004) (quoting *Ouda v. I.N.S.,* 324 F.3d 445, 451 (6th Cir.2003)). For step one, we use a substantial evidence standard of review, *Mullai v. Ashcroft,* 385 F.3d 635, 638 (6th Cir.2004); and for step two we hold the discretionary decision by the IJ as conclusive *unless* the decision is "manifestly contrary to the law and [is] an abuse of discretion." 8 U.S.C. § 1252(b)(4)(D).

The substantial evidence standard requires us to uphold the BIA's decision if the record as a whole, and not simply the evidence in the record supporting the agency's decision, contains reasonable, substantial, and probative evidence sufficient to support the decision. *Mullai,* 385 F.3d at 638. We may not reverse simply because we would have decided the case differently; we may reverse the BIA's factual determinations only if the evidence compels a conclusion contrary to the

---

[1]In determining eligibility for asylum and withholding, courts examine the same factors. A higher probability as to the likelihood of persecution is required to establish the right to withholding of removal. *See Castellano-Chacon v. I.N.S.,* 341 F.3d 533, 545 (6th Cir.2003); 8 C.F.R. § 208.16(b)(1). In order for this Court to grant relief under Article 3 of the U.N. Convention Against Torture ("CAT"), Petitioners would have to prove that it is more likely than not that they would be subjected to torture if they were returned to their country for origin. 8 C.F.R. § 208.16(c)(2). Because we hold that the IJ did not err in denying Petitioners' application for asylum, we need not analyze their claims for withholding of removal or under CAT, as the standards are more stringent.

one the BIA reached. *Id.; Adhiyappa v. I.N.S.,* 58 F.3d 261, 265 (6th Cir.1995); *Klawitter v. I.N.S.,* 970 F.2d 149, 152 (6th Cir.1992).

The I.N.A. grants the Attorney General the discretionary power to grant asylum to any alien who qualifies as a "refugee" under 8 U.S.C. § 1101(a)(42). 8 U.S.C. § 1158(b)(1). A "refugee" is defined as any person who is unable or unwilling to return to his or her home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). It is the alien who bears the burden of proving past persecution or a well-founded fear of future persecution, 8 C.F.R. § 208.13(a); 8 C.F.R. § 208.16(b), but a petitioner who demonstrates past persecution is entitled to a rebuttable presumption of a well-founded fear of future persecution. 8 C.F.R. § 208.13(b)(1). If this presumption is established, the government may rebut it by showing by a preponderance of the evidence that there has been a fundamental change in circumstances that would remove that well-founded fear. 8 C.F.R. § 1208.13(b)(1)(i)(A); *Mullai,* 385 F.3d at 638; *Ouda v. I.N.S.,* 324 F.3d 445, 452 (6th Cir. 2003).

In order to demonstrate eligibility for asylum on the basis of a well-founded fear of persecution under 8 C.F.R. § 208.13(b)(2), an applicant must establish that: (1) he or she has a fear of persecution in his or her country on account of race, religion, nationality, membership in a particular social group, or political opinion; (2) there is a reasonable possibility of suffering such persecution if he or she were to return to that country; and (3) he or she is unable or unwilling to return to that country because of such fear. An applicant's fear of persecution must be both subjectively genuine and objectively reasonable. *See Perkovic,* 33 F.3d at 620-21. An applicant

must therefore "actually fear that he will be persecuted upon return to his country, and he must present evidence establishing an 'objective situation' under which his fear can be deemed reasonable." *Id.* (quoting *I.N.S. v. Cardoza-Fonseca,* 480 U.S. 421, 430-31 (1987)).

In this case, the IJ found that the Lakajs were previously persecuted by the Communist Regime. This entitled the Lajaks to a presumption of refugee status. However, the IJ also found that in accordance with the principle of *rebus sic stantibus*, the government had proved a fundamental change in circumstances, which rebutted that presumption. In 1991, the Communist Regime in Albania was overthrown and free and fair elections were held. The Democratic Party maintained a majority position until approximately 1997. When Lakaj fled her country, the power had shifted via free elections to the Socialist Party.

Lakaj claims that there is little difference between the Communist Regime and the Socialist Party, but offers no evidence of this assertion. The government, however, submitted a copy of the U.S. State Department 2001 Profile of Asylum Claims and Country Conditions, which concluded that "with the Socialist Party leading a coalition government, it is highly unlikely in today's circumstances that many applicants will have credible claims to political persecution," and that "there is virtually no evidence that individuals are targeted for mistreatment on political grounds." (J.A. at 150-51, 153-54). This report also states that "there is no post-Communist tradition of retribution against political leaders." (J.A. at 154).

In absence of a presumption in her favor, Lakaj attempts to establish a well-founded fear of future persecution through the Cobani criminal investigation by the District Attorney of Triana. The IJ held and we agree that the government of every sovereign nation has a legitimate interest in

investigating criminal activity. There was no indication from the evidence presented or testimony given that the Cobani investigation was a pretext for persecution based on political belief or affiliation. Lakaj was being investigated for notarizing a document, without reviewing it, for a former high ranking government official, Mr. Cobani. This document allegedly authorized the use of chemical weapons. She was only interviewed a few times and there was no evidence presented of any arrest warrant that was issued or other sentence handed down in this matter against her. Lakaj remained employed throughout the investigation, was allowed to obtain a passport during the investigation, and traveled internationally without be detained or arrested at the borders.

Lakaj has endured no more than mere questioning relating to a criminal prosecution. In *Perkovic,* F.3d at 622, we explained that:

> [O]ne who commits a 'serious non-political crime' in his home country cannot be said, on account of his crime alone, to fear being persecuted because of his political opinion. If he is, say, an armed robber, his government has a legitimate bone to pick with him, regardless of any political views he may hold.

Legitimate criminal investigation or prosecution is not persecution "on the account of" an applicant's political opinion. Only where the alien can establish that he or she has been subject to a criminal investigation or prosecution that was actually pretext for persecution may asylum be justified. Although, Lakaj may subjectively believe that she will be persecuted for her affiliation with a political party or the former government, this belief is not objectively reasonable. As Petitioners have not presented evidence that Albanian authorities were using a criminal investigation as pretext for persecuting Ms. Lakaj for her political beliefs, the IJ reasonably concluded that the Albanian authorities investigation into criminal activity was legitimate. The record does not compel a different result and likewise, the IJ's decision is neither contrary to law nor an abuse of discretion.

## IV. CONCLUSION

For the foregoing reasons, the petition for review of the decision of the BIA is **DENIED**.