*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 10a0178p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

LAZARO CRUZ-SAMAYOA; ABIGAIL ONOFRE
CRUZ-GONZALEZ; DELIA SUSANA CRUZ,
                              *Petitioners,*

                                                    No. 09-3824

          *v.*

ERIC H. HOLDER, JR., Attorney General,
                              *Respondent.*

On Petition for Review from the
Board of Immigration Appeals.
Nos. A096 351 548; A079 538 299; A072 521 415.

Decided and Filed: June 21, 2010

Before: NORRIS, MOORE, and McKEAGUE, Circuit Judges.

_____

**COUNSEL**

**ON BRIEF:** Jamie B. Naini, LAW OFFICES OF JAMIE B. NAINI, Bartlett, Tennessee,
for Petitioners. Kristofer R. McDonald, UNITED STATES DEPARTMENT OF JUSTICE,
Washington, D.C., for Respondent.

_____

**OPINION**

_____

KAREN NELSON MOORE, Circuit Judge. This case requires us to differentiate
between a fear of legitimate criminal *prosecution* and illegitimate *persecution* for purposes
of eligibility for humanitarian relief from removal under the Immigration and Nationality Act
("INA"). Lazaro Cruz-Samayoa ("Cruz") and his two adult children, Abigail Onofre Cruz-
Gonzalez ("Abigail") and Delia Susana Cruz ("Delia"), collectively, the Cruz family,
petition this court for review of a Board of Immigration Appeals ("BIA") order denying their
respective applications for asylum, withholding of removal, and relief under the Convention
Against Torture ("CAT"). Because Cruz has failed to establish that he is a refugee within

1

the meaning of the INA, and Abigail and Delia have failed to show that they cannot reasonably and safely relocate within Guatemala to avoid potential harm, we **DENY** their petitions for review.

## I.  BACKGROUND

### A.  Factual Background

For the purposes of the Cruz family's applications for relief, the trouble began in Guatemala in September 2003 when Hector Reyes Perez ("Reyes"), a community leader and peasant farmer, disappeared.  Reyes was the manager of several swaths of farmland owned by the Spaniard Carlos Vidal Fernandez Alejos ("Vidal"), including one parcel named Nueva Linda in the Guatemalan state of Retalhuleu.  At the time of Reyes's disappearance, the Guatemalan government had initiated a program under which it agreed to redistribute parcels of farmland, including some that Vidal owned, to the peasant farmers in the region.  Reyes was allegedly helping to organize the government's transfer of land, which was clearly in direct conflict with the interests of Vidal, his employer.  Because of Reyes's role in the redistribution plan, many individuals from Retalhuleu, including Cruz, believed that Vidal had orchestrated Reyes's disappearance and suspected death in order to prevent the seizure of his land.  At the time of Reyes's disappearance, Cruz was still residing in the United States, but apparently motivated by the prospect of obtaining some land as a result of the government's redistribution efforts, Cruz returned to Guatemala in January 2004.

Despite the general belief among the peasant farmers that Vidal was responsible for Reyes's disappearance, the Guatemalan government never brought charges against Vidal, and many organizations, including Amnesty International, questioned the thoroughness of the government's investigation.  To protest the government's inaction, approximately nine hundred peasants, many of whom were members of the Association of Farmers' Development Committees ("CODECA"), peacefully occupied Nueva Linda for eight months in early 2004.  Cruz took part in this protest and was nominated to be one of the four spokespersons for CODECA.  According to Cruz, their hope was to pressure the authorities into investigating further Reyes's disappearance.  Cruz also testified that this initial occupation was authorized by court order.  As a spokesperson, Cruz engaged in negotiations between the peasant farmers and the Guatemalan government, which ultimately proved

fruitless. At some point either during or following the negotiations, the governor of Retalhuleu ordered the peasant farmers to vacate the property. The record appears to indicate that the original judicial order allowing the peaceful occupation had been overruled and that the eviction order was valid.

According to Cruz's testimony and the articles that he submitted in support of his application for relief, when the peasant farmers refused to vacate the land, around 1000 Guatemalan police, known as the National Civilian Police ("PNC"), entered Nueva Linda in an attempt to remove the protestors and enforce the eviction order. Unfortunately, a violent confrontation ensued. An Amnesty International report, which Cruz introduced as part of the record,[1] indicates that "[t]he first line of police [to enter Nueva Linda] was unarmed." Amnesty Int'l, Guatemala: Land of Injustice? (Mar. 2006), *available at* http://www.amnesty.org/es/library/info/AMR34/002/2006. Press reports in the record indicate, however, that as the officers advanced the occupying peasant farmers attacked the PNC with numerous weapons, including AK-47s, rifles, firebombs, pyrotechnic devices, and machetes. One article that Cruz submitted states that as the PNC advanced, "two agrarian leaders" on horseback "distribute[d] ammunition[] to their companions," encouraging them to fight the police. Pet. App'x at 202 (Prensa Libre Art.). Not surprisingly, the police responded with tear gas, batons, and perhaps firearms, although it is not entirely clear from the record. Cruz testified that despite the press accounts and the Guatemalan government's assertions, the peasant farmers did not, in fact, bring weapons to the occupation of Nueva Linda. Instead, Cruz claims that the PNC and individuals working in conjunction with Vidal introduced weapons into the otherwise peaceful protest in order to undermine the objectives of the occupation. Cruz testified that he did not possess any weapons and did not harm any police officers. He stated that he engaged in only peaceful protest tactics—hanging signs and demanding justice. At the end of the ordeal, however, there were scores injured and at least ten individuals dead, including seven peasant farmers and three police officers.

---

[1] Cruz's version of the report appears to be a very poor, perhaps automated, translation from Spanish into English, and it is extremely difficult to decipher. Because the cover page of the report includes a web address to Amnesty International's English-language version, we rely on that document instead of the translated version in the record.

Following the incident at Nueva Linda, the Guatemalan government issued an arrest warrant for Cruz based on his alleged participation and leadership role at Nueva Linda. Because Cruz believed that the Guatemalan government was attempting to prosecute him based solely on his political opinion, and not for any legitimate law-enforcement purpose, he fled Guatemala to the United States. Cruz testified that given the imbalance of power between the landed class and the peasants, there was no hope for a fair trial in Guatemala. Both Abigail and Delia testified that based on their relationship to their father they also feared being returned to Guatemala. Specifically, they believed that Cruz's political opinion would be imputed to them and that they would become the targets of violence at the hands of Cruz's enemies, including Vidal and the rest of the property owners of Spanish descent in the region.

## B. Procedural History

The Immigration Judge ("IJ") held a hearing on the merits of Cruz's, Abigail's, and Delia's applications for asylum, withholding of removal, and CAT relief in July 2007.[2] The IJ found that the Cruz family was "basically credible." Pet. App'x at 27 (IJ Decision). Specifically with regard to Cruz, the IJ concluded that he would "largely accept . . . Cruz's discussion of what happened." *Id.* In fact, the IJ did not believe Cruz to be "lying about anything that actually happened," and concluded that Cruz testified credibly "as to what happened, what he thinks happened, or what he believes in his opinion is the motivation of the people in Guatemala." *Id.* Despite this conclusion, however, the IJ then refused to "accept [Cruz's] description of what went on on the Vidal farm," concluding that all of Cruz's supporting documentation indicated that it was not "a peaceful demonstration of any sort." *Id.* Moreover, the IJ specifically rejected Cruz's claim that Vidal was responsible for the introduction of weapons, deeming Cruz's assertion "impossible to believe." *Id.* at 28.

---

[2]Cruz had filed his original application for asylum in 1994. At the 2007 hearing, the IJ concluded that Cruz had "abandoned" the original application by returning to Guatemala in the interim period. Pet. App'x at 20 (IJ Decision). Instead of having Cruz file a new application, however, the IJ agreed to evaluate the Cruz family's claims to the extent that they were predicated solely on those events occurring in and after 2004. At no point before the agency or before this court has Cruz challenged this determination.

The IJ ultimately concluded that Cruz "was involved in an armed confrontation with the police" at the Nueva Linda farm, "which was certainly illegal at the time and place of its occurrence," and that Cruz was barred from asylum and withholding of removal. *Id.* The IJ alternatively concluded that Cruz was "clearly a terrorist as that term is defined in the [INA]," and would be barred from relief on that ground as well. *Id.* With respect to Abigail and Delia, the IJ acknowledged that "[t]here is some level of risk to them" as a result of their father's activities but that it would be "extremely unlikely that anyone would connect them with their father's activism" and cause them harm provided that "they returned to Guatemala City or some other part of the country." *Id.* at 30. Furthermore, the IJ concluded that Abigail and Delia had failed to establish that "members of a family" amounted to a particular social group under the INA and would have failed to meet the burden to show eligibility for relief even assuming that relocation within Guatemala were not a possibility. *Id.* at 31. Turning to the Cruz family's CAT claims, the IJ found that "there is no evidence in th[e] record that would indicate that if [Cruz] were to be prosecuted under the warrant for his arrest in Guatemala that he would more likely than not be tortured." *Id.* at 29–30. The IJ further concluded that "there is no evidence whatsoever that the children would be tortured by anyone, let alone someone with which the government acquiesces or turns a blind eye to." *Id.* at 30.

The BIA affirmed the IJ's decision denying asylum and withholding of removal to Cruz on the ground that Cruz had failed to establish that the criminal charges he faces in Guatemala are, in fact, pretext for persecution based on his political opinion. Because Cruz had failed to meet his burden to show that he faces persecution on political grounds, the BIA expressly declined to "reach the Immigration Judge's alternate determination that [Cruz] is a terrorist and thus barred from obtaining [] relief." Pet. App'x at 8 (BIA Op.). Disposing of Abigail's and Delia's claims, the BIA ruled that they had not shown that they could not reasonably relocate within Guatemala in order to avoid harm, thus failing to meet their burden for asylum or withholding of removal based on fear of future persecution. Lastly, the BIA upheld the IJ's denial of CAT relief on the grounds that none of the members of the Cruz family had presented sufficient

evidence to show "that they face a clear probability of torture in Guatemala." *Id.*  The Cruz family timely sought review of the decision of the BIA.

## II.  ANALYSIS

### A.  Standard of Review

Because the BIA adopted and supplemented the IJ's decision, we review the opinion of the IJ in conjunction with the BIA's additional comments and discussion. *See Bi Feng Liu v. Holder*, 560 F.3d 485, 490 (6th Cir. 2009).  "We review the IJ's and BIA's findings for substantial evidence and may reverse only if the decision was 'manifestly contrary to law,' 8 U.S.C. § 1252(b)(4)(C), that is, if the evidence 'not only supports a contrary conclusion, but indeed *compels* it,'" *Haider v. Holder*, 595 F.3d 276, 281 (6th Cir. 2010) (quoting *Ouda v. INS*, 324 F.3d 445, 451 (6th Cir. 2003)).

### B.  IJ's Credibility Determination

A preliminary matter that this court must address before reaching the issue of whether Cruz has established eligibility for relief from removal involves a dispute over the IJ's credibility finding.  Cruz argues that the IJ's finding on his credibility was inconsistent.  Cruz claims that, in one breath, "[t]he IJ explicitly [found] Mr. Cruz to be credible and state[d]" that the IJ did not believe Cruz to be "'lying about anything that actually happened,'" but, "[i]n almost in the same breath . . . the IJ disavow[ed] Mr. Cruz's account of the situation at Mr. Vidal's farm."  Appellant Br. at 27 (quoting IJ's Decision).  Cruz asserts that "[i]t is extremely unclear exactly what portion of Mr. Cruz's testimony the IJ believed if he did not believe the portion regarding the farmer's group," *id.*, and he argues before this court that he "must be found credible" and that "his testimony treated as such."  *Id.* at 28.  The BIA made no finding with regard to credibility.

We agree with Cruz that there is some tension between the IJ's determination that Cruz was "basically credible" and that he was not lying "about anything that actually happened," Pet. App'x at 27 (IJ Decision), and the subsequent conclusion that Cruz's account of the confrontation at Nueva Linda was "impossible to believe," *id.* at 28.  In

essence, despite a statement that Cruz was not lying, the IJ did appear to treat his testimony as untrue, and the IJ's conflicting statements make it difficult to determine what the IJ actually credited. Recently, in *Haider*, a panel of this court confronted a similar challenge to an IJ's ambiguous credibility finding when, as here, the credibility determination was not the basis of the agency's ultimate decision to deny relief. In *Haider*, the panel held that "when an IJ or the BIA expresses suspicion about an applicant's lack of credibility but the BIA fails to make an explicit adverse determination and instead denies relief on some other basis, we will assume that the applicant was credible in order to review the actual grounds for the ruling." *Haider*, 595 F.3d at 282. "If we conclude that the stated basis for denying relief was supported by substantial evidence, further review is foreclosed," but "[i]f the evidence compels the opposite result, however, we will remand for a credibility determination." *Id.* (citing *Cordon-Garcia v. INS*, 204 F.3d 985, 993–94 (9th Cir. 2000)); *see also Maklaj v. Mukasey*, 306 F. App'x 262, 264 n.4 (6th Cir. 2009) (unpublished opinion).

We will thus assume for the purposes of this appeal that Cruz testified credibly—i.e., that although Cruz was a leader of a group of individuals that ultimately engaged in a protest that turned violent, Cruz himself was unarmed, did not engage in violent behavior, and was not responsible for arming the peasants who did possess weapons. Ultimately, however, the assumption that Cruz testified credibly is irrelevant because, for the reasons outlined below, we hold that the BIA's finding that Cruz will not be persecuted upon his removal to Guatemala is supported by substantial evidence, and no remand is required. *Cf. Haider*, 595 F.3d at 283.

## C. Cruz Is Ineligible for Asylum and Withholding of Removal

"The disposition of an application for asylum involves a two-step inquiry: (1) whether the applicant qualifies as a refugee as defined in 8 U.S.C. § 1101(a)(42)(A), and (2) whether the applicant merits a favorable exercise of discretion by the Attorney General." *Kouljinski v. Keisler*, 505 F.3d 534, 541 (6th Cir. 2007) (internal quotation marks omitted). "[T]o qualify as a refugee," the applicant must establish "that he or she has suffered past persecution on the basis of race, religion, nationality, social group, or

political opinion; or . . . show[] that he or she has a well-founded fear of persecution on one of those same bases." *Id.*; *see also* 8 C.F.R. § 1208.13(b). If an individual is eligible for asylum, then the applicant bears the "burden of establishing that the favorable exercise of discretion is warranted." *Kouljinski*, 505 F.3d at 542 (internal quotation marks omitted).

"To prevail on a petition for withholding of removal under the INA, an alien must show that there is a 'clear probability,' that is, that 'it is more likely than not,' that [he or] she would be subject to persecution on the basis of one of these five grounds were [he or] she removed from this country." *Almuhtaseb v. Gonzales*, 453 F.3d 743, 749 (6th Cir. 2006) (quoting *Liti v. Gonzales*, 411 F.3d 631, 640–41 (6th Cir. 2005), and 8 C.F.R. § 1208.16(b)(2)). "By contrast, to be eligible for withholding of removal under the CAT, the 'applicant bears the burden of establishing it is more likely than not that he or she would be tortured if removed to the proposed country of removal.'" *Id.* (quoting *Liti*, 411 F.3d at 641).

The BIA's conclusion that Cruz is not a "refugee" and is ineligible for asylum or withholding of removal because he does not fear persecution on account of his political opinion is supported by substantial evidence. Accordingly, we deny Cruz's petition for review.[3] As this Circuit has recognized previously, there is a marked distinction between persecution and criminal prosecution. *See, e.g.*, *Perkovic v. INS*, 33 F.3d 615, 622 (6th Cir.1994); *Hajdari v. Gonzales*, 186 F. App'x 565, 568 (6th Cir. 2006) (unpublished opinion); *Lakaj v. Gonzales*, 158 F. App'x 678, 683 (6th Cir. 2005) (unpublished opinion). That is not to say, however, that there are not instances in which criminal prosecution can amount to persecution within the meaning of the INA. *Haider*, 595 F.3d at 286–87 ("[T]he types of actions that might cross the line from harassment to persecution include: detention, arrest, interrogation, prosecution, imprisonment, illegal searches, confiscation of property, surveillance, beatings, or torture." (internal quotation marks and alteration omitted)).

---

[3]Cruz also challenges the IJ's alternative conclusion that he is a "terrorist" within the meaning of the INA. The BIA expressly declined to opine on the IJ's conclusion, and as it does not affect the outcome of this proceeding, we offer no opinion on that issue.

Some courts have noted that persecution does not exist where the law that the native country seeks to enforce in its criminal prosecution is "generally applicable." *Saleh v. U.S. Dep't of Justice*, 96 F.2d 234, 239 (2d Cir. 1992); *Abedini v. INS*, 971 F.2d 188, 191 (9th Cir. 1992). Still other courts have noted that petitioners fail to establish persecution where the law is "fairly administered." *Scheerer v. U.S. Att'y Gen.*, 445 F.3d 1311, 1315 (11th Cir. 2006); *Shardar v. Ashcroft*, 382 F.3d 318, 323 (3d Cir. 2004); *Ngure v. Ashcroft*, 367 F.3d 975, 991 (8th Cir. 2004); *Ali v. Gonzales*, 190 F. App'x 13, 16 (1st Cir. 2006) (unpublished opinion).

A petitioner may also establish that prosecution reaches the level of persecution if the individual can demonstrate that the prosecution or criminal investigation "was actually pretext for persecution" on account of one of the INA's enumerated grounds. *Lakaj*, 158 F. App'x at 683; *see Hajdari*, 186 F. App'x at 568. To determine whether the government's motivations for criminal prosecution are improper, this Circuit has looked at the substance and context of the law that the native country is attempting to enforce. For example, in *Perkovic*, a panel of this Circuit held that criminal prosecution under laws in the former Yugoslavia that "outlaw[ed] and punishe[d] peaceful expression of dissenting political opinion, the mere possession of Albanian cultural artifacts, the exercise of citizens' rights to petition their government, and the association of individuals in political groups with objectives of which the government d[id] not approve" amounted to political persecution and not legitimate criminal prosecution. *Perkovic*, 33 F.3d at 622; *see also Palushaj v. INS*, No. 93-3196, 1994 WL 198169, at *2 (6th Cir. May 17, 1994) (unpublished opinion) (indicating that charges of being a "counter-revolutionary" may form the basis of a persecution claim because "'counterrevolution' is a classic political crime"); *Li Wu Lin v. INS*, 238 F.3d 239 (3d Cir. 2001) (inquiring into the context of a trespassing charge that was levied immediately after the massacre in Tiananmen Square). Moreover, "prosecution under [a] law of general applicability can [also] justify asylum or withholding of [removal]" in cases where "the punishment under the law is sufficiently serious to constitute persecution." *Shardar*, 382 F.3d at 323 (citing *Fisher v. INS*, 79 F.3d 955, 962 (9th Cir. 1996), for the proposition "that there are 'two exceptions to the general rule that prosecution does not

amount to persecution—disproportionately severe punishment and pretextual prosecution'").

In the instant case, the Guatemalan government has filed charges against Cruz for his participation and leadership in the events that took place at Nueva Linda, and it is for this reason that Cruz entered the United States most recently. The indictment and warrant are not part of the record, but according to an e-mail from the U.S. Citizenship and Immigration Services Fraud Detection Unit, the INTERPOL report indicates that as a result of Cruz's "organization and incitement of rural inhabitants to resist Guatemalan security forces, . . . [t]he charges outstanding against Cruz-Samayoa are murder, attempted murder, serious injuries, sedition, public intimidation, instigation to commit crimes, illegal grouping of armed people, assault, resistance with specific aggravations, and disobedience." Pet. App'x at 188.[4] Based on the INTERPOL report, the laws that Guatemala seeks to enforce against Cruz are laws of general applicability and their underlying substance is not questionable. In fact, many, if not all, of the charges would constitute crimes under the laws of the United States. *See Guchshenkov v. Ashcroft*, 366 F.3d 554, 559 (7th Cir. 2004) (stating "that prosecution for activities that would be illegal under our own laws is not grounds for asylum . . ."); *cf. Perkovic*, 33 F.3d at 622.

Furthermore, there is no record evidence indicating that the Guatemalan government's desire to prosecute Cruz criminally is, in reality, based on the Guatemalan government's dislike of his political opinion. Cruz claims that the pretextual nature of the charges is evident because they (1) are baseless and (2) include a charge for narcotics trafficking, which has nothing to do with the Nueva Linda confrontation. Neither of these facts, however, demonstrates pretext in this case. First, neither the BIA nor the federal court of appeals has the jurisdiction to determine whether Cruz is, in fact, guilty of the charges levied, and the mere fact that he proclaims innocence is an insufficient basis upon which to determine that the charges are pretextual. *See, e.g.*, *Tadeo v. INS*, No. 94-70643, 1996 WL 207141, at *2 (9th Cir. Apr. 26, 1996) (unpublished

---

[4]Although Cruz challenged the admissibility of the e-mail relating the contents of the INTERPOL report before the IJ, Cruz neither appealed the IJ's decision to admit the e-mail as evidence of the charges to the BIA nor challenges its evidentiary value in this court.

memorandum); *Castaneda v. INS*, 23 F.3d 1576, 1578 (10th Cir. 1994). According to the objective record evidence that Cruz himself introduced, he was a leader of or spokesperson for the peasant farmer group at Nueva Linda, and the confrontation between that group and the police did turn extremely violent, resulting in several deaths. Even crediting Cruz's testimony that he did not harm any police officers and was unarmed, Guatemala has the right "to protect [itself] from criminals," *Perkovic*, 33 F.3d at 622, which includes bringing charges against and prosecuting those that it suspects are guilty of legitimate crimes.

Moreover, Cruz has failed to show that he would be unable to contest these "baseless" charges in Guatemala. Although Cruz did introduce testimony from Harry Vanden, Ph.D., an expert in Guatemalan political conflicts, that Cruz's status as a peasant farmer made the likelihood of a "fair trial" in Guatemala "very, very low[,]" Pet. App'x at 93 (Vanden Test.), the IJ only partially credited this testimony because "Dr. Vanden was not able to back up some of his statements with specific instances," Pet. App'x at 25 (IJ Decision), and appeared to advocate on behalf of the Cruz family, as opposed to acting as an objective expert. The U.S. State Department 2006 Country Report, which was also submitted as evidence, likewise provides little support for the conclusion that Cruz's trial would be unfair or that he would be unable to make his claim of innocence before a Guatemalan tribunal. *See* Pet. App'x at 172–73 (U.S. Dep't State Country Report 2006). The Guatemalan "constitution provides for the right to a fair, public trial, the presumption of innocence, the right to be present at trial, and the right to counsel." *Id.* at 173. And although there were some reports of "corruption, ineffectiveness, and manipulation of the judiciary," the country's highest court "continued to seek the suspension of judges and to conduct criminal investigations for improprieties or irregularities in cases under its jurisdiction," *id.* at 172, and "[t]here were no reports of political prisoners or detainees," *id.* at 173. In short, the record evidence fails to compel the conclusion that Cruz would not be able to contest the charges and receive a fair trial upon return to Guatemala.

Cruz's second assertion of pretext concerns the purported inclusion of a drug-trafficking charge in the indictment. This claim is also without merit. Notably, the INTERPOL report does not include such a charge. In fact, neither does the letter from Cruz's Guatemala-based defense attorney, which was submitted as evidence before the IJ. That letter simply states that the case against Cruz in relation to his activities at Nueva Linda is pending before the "Court of First Instance of Criminal Narcotrafficking and Crimes Against the State of Retalhuleu." Pet. App'x at 186–87 (Att'y Letter). Thus, although Cruz may have realistically believed that he was subject to a drug charge, revealing the Guatemalan government's nefarious motive, the objective record evidence indicates differently. *See Shardar*, 382 F.3d at 323.

In sum, the record evidence simply does not compel the conclusion that Cruz fears illegitimate persecution on account of his political opinion as opposed to legitimate criminal prosecution. *See Ngure*, 367 F.3d at 991 ("Ngure has not produced evidence that the criminal charges against him were improperly motivated or that he would receive an unfair trial."). Again, Cruz admitted to being one of the leaders of a group of individuals occupying Nueva Linda, and it is clear that some of those individuals ultimately engaged in an extremely violent conflict with Guatemalan police that resulted in at least ten deaths, regardless of whether Cruz himself injured police officers or incited the violence. His leadership role in this confrontation is sufficient to make him criminally liable. *See, e.g.*, *id.* ("The evidence . . . does not compel the conclusion that the Kenyan government's issuance of an arrest warrant for violating a bond and reporting requirement imposed in the wake of a riotous demonstration was really an effort to persecute Ngure because of his political opinion."); *Shardar*, 382 F.3d at 323 ("[T]he evidence supports the conclusion that Shardar was not persecuted on account of his political opinion; rather, he was legitimately prosecuted for participation in a violent political demonstration."); *Xue v. Gonzales*, 121 F. App'x 752, 753 (9th Cir. 2005) (unpublished opinion) ("Substantial evidence supports the IJ's finding that petitioner failed to establish past persecution or a well-founded fear of future persecution. Petitioner participated in a workplace demonstration that escalated into a physical fight and left many individuals injured. Petitioner received two court summonses regarding

the assaults which he ignored and fled the country fearing arrest."); *Ahmed v. INS*, 202 F.3d 277 (table) (9th Cir. 1999) (unpublished memorandum) (holding the petitioner "had failed to show . . . a well-founded fear of persecution" and was "fleeing legitimate prosecution in his home country" when the petitioner "was arrested . . . because he participated in a violent demonstration in which people were armed with hockey sticks and pipe bombs"). As a result, Cruz is ineligible for asylum and withholding of removal, and we **DENY** his petition for review.

### D.    Abigail and Delia Failed to Meet the Burden for Asylum and Withholding of Removal

Turning to Abigail and Delia's claims for asylum and withholding of removal, we also deny their petitions for review. Both Abigail's and Delia's applications for relief are based solely upon their fear of future persecution at the hands of the Spanish farm owners and their henchmen who allegedly want to capture or kill their father based on his past political activism. Pet. App'x at 112 (Abigail Test.); *id.* at 117 (Delia Test.). The BIA agreed with the IJ that although Abigail and Delia might face some risk of future harm at the hands of their father's enemies and as a result of their father's political activism, they had failed to show that they could not reasonably relocate somewhere outside of their small town in Guatemala where they would be safe. The BIA thus denied their petitions because, under the INA, "[a]n applicant does not have a well-founded fear of persecution if the applicant could avoid persecution by relocating to another part of the applicant's country of nationality . . . if under all the circumstances it would be reasonable to expect the applicant to do so." 8 C.F.R. § 1208.13(b)(2)(ii).

Abigail and Delia did not challenge in their opening brief before this court the agency's determination that they could internally relocate, instead arguing only that the IJ erred in concluding that their membership in the Cruz family did not constitute a particular social group.[5] Appellant Br. at 23–27. In response to the Government's

---

[5] As the BIA rested its judgment solely on their ability to internally relocate, it is not the place of this court to pass upon the particular-social-group issue in the first instance here. *See INS v. Ventura*, 537 U.S. 12, 16 (2002) ("Generally speaking, a court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands."). We do note, however, that the IJ's determination that a family cannot constitute a particular social group is called into question by a recent published decision from this Circuit, *Al-Ghorbani v. Holder*, 585 F.3d 980, 995–97 (6th Cir. 2009).

argument that they have thus waived this dispositive issue before this court, however, in their reply brief Abigail and Delia strangely assert that they did not challenge the finding "because there was no need to do so." Reply Br. at 9. They appear to argue that because they believe that it was the government's burden to show that Abigail and Delia could avoid persecution by relocating, "there was no need to address" the IJ's or BIA's conclusions that they could internally relocate. Abigail and Delia's argument seriously misunderstands appellate practice and review. Even if the burden of proof to show that relocation is possible rested with the government—which, under the circumstances of the instant case, it did not[6]—in order to preserve the agency's dispositive conclusion for appellate review, Abigail and Delia were still under an obligation to challenge the adverse determination on some ground, whether it be because the agency misplaced the burden of proof or on the ground that the agency's finding simply was not supported by substantial evidence. In failing to assert any argument challenging the agency finding that they can internally relocate, and by, in fact, asserting that they did not "need to do so," the matter is waived. *Bi Feng Liu*, 560 F.3d at 489 n.4 (6th Cir. 2009) ("[A]n issue that is not raised in a party's briefs may generally be deemed waived."). We therefore **DENY** the petitions for review of the BIA's denial of Abigail's and Delia's applications for asylum and withholding of removal.[7]

---

[6] According to the Federal Regulations, "In cases in which the applicant has not established past persecution the applicant shall bear the burden of establishing that it would not be reasonable for him or her to relocate, unless the persecution is by a government or is government-sponsored." 8 C.F.R. § 1208.13(b)(3)(I); *see also Rahadi v. Mukasey*, 307 F. App'x 197, 203 (10th Cir. 2009) (unpublished opinion) ("Both petitioners claim they will suffer future persecution based on their religion if removed to Indonesia," but, the "[p]etitioners have not met their burden of proof that they could not relocate to a relatively safe area of Indonesia."). In the instant case, both Abigail and Delia based their application on a fear of future persecution and testified that they fear harm only at the hands of the Spanish farm owners and their henchmen—i.e., neither government nor government-sponsored individuals. *See Mejilla-Romero v. Holder*, 600 F.3d 63, 74–75 (1st Cir. 2010) ("Mejilla-Romero's argument that the government failed to produce evidence that he could safely relocate elsewhere within Honduras misplaces the burden of proof. Having failed to show that he suffered past persecution, it was Mejilla-Romero's burden to demonstrate that he could not avoid future persecution by moving to another part of Honduras.").

[7] Even if we were to address the merits, we observe that Abigail and Delia have not presented any evidence that internal relocation would not be reasonable.

**E.  The CAT Claims Are Without Merit**

Finally, we also deny the Cruz family's petitions for review under the Convention Against Torture.  Under CAT, "removal must be withheld if 'it is more likely than not that [the applicant] would be tortured if removed to the proposed country of removal.'"  *Haider*, 595 F.3d at 289 (alteration in original) (quoting 8 C.F.R. § 1208.16(c)(2)).  "Torture is 'an extreme form of cruel and inhuman treatment,'" and includes "'any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted' to extract information, punish, intimidate, coerce, or otherwise discriminate, 'when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.'"  *Id.* (quoting 8 C.F.R. § 1208.18(a)(1), (2)).  An applicant for relief "need not show that the harm she [or he] faces is based on one of the five grounds . . . required under the INA, but rather must establish a *particularized* threat of torture."  *Almuhtaseb*, 453 F.3d at 751 (internal quotation marks omitted and emphasis added).

The IJ's and BIA's denial of relief under CAT is supported by substantial evidence, and the Cruz family's assertion and evidence that they will "quite likely," Appellant Br. at 36, face torture or death upon their return to Guatemala are both too generalized and too speculative to form the basis of relief.  Although the U.S. Department of State 2006 Country Report stated that "during the year there were credible reports of torture, abuse, and other mistreatment by PNC members," Pet. App'x at 170, and Dr. Vanden speculated that they could be harmed, none of this evidence compels the conclusion that it is "more likely than not" that Cruz, Abigail, and Delia themselves would be tortured within the meaning of CAT upon their removal to Guatemala.  The Cruz family's CAT claims thus fail.

### III.  CONCLUSION

For the foregoing reasons, we deny the Cruz family's petitions for review of their claims for asylum, withholding of removal, and relief under the Convention Against Torture.