RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 22a0141p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

WILSON MANUEL RONDON ANTONIO,

        *Petitioner*,

    *v.*

MERRICK B. GARLAND, Attorney General,

        *Respondent*.

No. 22-3401

On Emergency Motion for Stay of Removal.
Petition for Review from the Board of Immigration Appeals;
No. A 078 763 727.

Decided and Filed:  June 29, 2022

Before:  GILMAN, KETHLEDGE, and STRANCH, Circuit Judges.

_____

### COUNSEL

**ON EMERGENCY MOTION FOR STAY OF REMOVAL:** Stephanie M. Blumenau, BLUMENAU LAW, PLLC, Detroit, Michigan, for Petitioner.  **ON RESPONSE:**  Jennifer A. Bowen, Anthony C. Payne, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

_____

### ORDER

_____

Wilson Manuel Rondon Antonio, a native and citizen of the Dominican Republic, petitions for review of an order from the Board of Immigration Appeals (BIA) that dismissed his appeal from an immigration judge's (IJ's) decision denying his request for deferral of removal under the Convention Against Torture (CAT).  He moves to stay his removal pending our

decision on the merits of his petition.  The government opposes a stay.  We previously granted an administrative stay pending receipt and full consideration of the administrative record.

We have the discretion to grant a stay of removal pending our consideration of a petition for review.  *See* 8 U.S.C. § 1252(b)(3)(B); *Nken v. Holder*, 556 U.S. 418, 433 (2009).  "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of [our] discretion."  *Nken*, 556 U.S. at 433−34.  Four factors guide our decision:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Id.* at 434 (internal citation omitted); *see also Kentucky v. Biden*, 23 F.4th 585, 593 (6th Cir. 2022) ("[W]e remember that '[t]hese factors are not prerequisites that must be met'; they are instead 'interrelated considerations that must be balanced together.'" (alterations in original) (quoting *SawariMedia, LLC v. Whitmer*, 963 F.3d 595, 596 (6th Cir. 2020)).  The first two factors "are the most critical."  *Nken*, 556 U.S. at 434.  More than a "possibility" of relief and irreparable harm is necessary to satisfy these factors, respectively, *id.* at 434−35, and even if a movant can demonstrate irreparable harm, "he is still required to show, at a minimum, 'serious questions going to the merits,'" *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153–54 (6th Cir. 1991) (quoting *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985)).

Here, everyone agrees that Rondon Antonio will likely be tortured if he is removed to the Dominican Republic—a remarkably strong satisfaction of the irreparable-harm factor.  Still, the standard articulated by the Supreme Court demands a strong showing of likelihood of success on the merits.  *See Nken*, 556 U.S. at 434.  The Seventh Circuit helpfully explains the standard in this circumstance: "a 'strong' showing does not mean proof by a preponderance—once again, that would spill too far into the ultimate merits for something designed to protect both the parties and the process while the case is pending." *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020).

With these principles in mind, and against the strong showing of irreparable harm in the case before us, we assess the likelihood of success on the merits.

"Torture," as defined under the CAT, "covers intentional governmental acts, not . . . acts by private individuals [who are] not acting on behalf of the government. The regulations require that the harm be 'inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.'" *In re J-E*, 23 I. & N. Dec. 291, 299 (BIA 2002) (quoting 8 C.F.R. § 208.18(a)(1)). The language of this regulation specifies that a petitioner can meet the definition of torture under CAT if he can show that the government would acquiesce to his torture. *See Haider v. Holder*, 595 F.3d 276, 289 (6th Cir. 2010) (citing 8 C.F.R. § 1208.18(a)(1)); *see also Parada v. Sessions*, 902 F.3d 9901, 916 (9th Cir. 2018) ("[T]he acquiescence standard is met where the record demonstrates that public officials . . . would acquiesce in torture the petitioner is likely to suffer.").

Rondon Antonio presents serious questions on the merits. First, the IJ and the BIA, in discounting the Country Report and background materials, relied on *Cruz-Samayoa v. Holder*, 607 F.3d 1145 (6th Cir. 2010), for the proposition that those reports, alone, cannot satisfy the applicant's burden to show that a foreign government is acquiescent to a petitioner's torture. Whether that reading of our caselaw is correct is open to question. *See id.* at 1153. Second, reviewing the record here, the country reports and other documents, at minimum, provide some corroboration for Rondon Antonio's claim. A report from Amnesty International, for example, shows that young individuals involved in drug-trafficking groups routinely pay fees to law enforcement to avoid arrest or drug confiscation. Citing the World Bank and Office of United Nations for Drug and Crimes, the report explains that "even if [gang members] were caught committing a crime, the possibility of buying one's way out through bribes to police was always a feasible option, as well as that of using padrinos who could intervene on their behalf and have court decisions suspended, or even have prison inmates freed." Other reports in the record provide similar indication that Rondon Antonio, who was involved with serious drug trafficking gangs that might have control over the Dominican Republic police forces, will not be protected by the government from the torture to which he will be subject upon his return. And Rondon Antonio has made a substantial showing that one of his torturers in the past was a police officer.

Whether these issues satisfy the standard to grant Rondon Antonio's petition is a question that goes to the ultimate merits which we do not address at this juncture. But his claim is far from frivolous and, in light of his strong showing of irreparable harm, his arguments present a sufficient likelihood of success to weigh in favor of granting a stay pending an appeal on the merits.

Turning to the final stay considerations, we recognize that there are competing public interests. "[T]here is a public interest in preventing aliens from being wrongfully removed . . . ." *Nken*, 556 U.S. at 436. On the other hand, "[t]here is always a public interest in prompt execution of removal orders." *Id*. But given the serious question on the merits, the undisputedly strong showing of irreparable harm, and Rondon Antonio's interest in avoiding wrongful removal, a stay pending a merits decision is necessary to preserve any value in hearing his case on the merits.

Accordingly, the motion for a stay of removal is **GRANTED**.

ENTERED BY ORDER OF THE COURT

Deborah S. Hunt, Clerk