RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 17a0138p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

BIJOU SENE,

*Petitioner,*

*v.*

No. 15-4007

JEFFERSON B. SESSIONS, III, Attorney General,

*Respondent.*

On Petition for Review from an Order
of the Board of Immigration Appeals.
No. A 095 569 029.

Decided and Filed:  February 8, 2017[*]

Before:  BATCHELDER, STRANCH, and DONALD, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:**  Bryan Scott Hicks, Lebanon, Ohio, for Petitioner.  Alexander J. Lutz, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

The court delivered a PER CURIAM opinion.  STRANCH, J. (pp. 7–8), delivered a separate concurring opinion.  DONALD, J. (pp. 9–10), delivered a separate dissenting opinion.

---

[*]This decision was originally filed as an unpublished opinion on February 8, 2017.  The court has now designated the opinion for full-text publication.

---

**OPINION**

---

PER CURIAM.  Bijou Sene petitions this court for review of an order of the Board of Immigration Appeals (BIA) dismissing her appeal from the denial of her application for withholding of removal.

Sene is a native of Mauritania and a citizen of both Mauritania and Senegal.  On April 25, 2002, Sene filed an application for asylum, withholding of removal, and protection under the Convention Against Torture (CAT), asserting that her family was mistreated and tortured by the authorities in Mauritania because of their race and membership in a particular social group.  In 2005, the Department of Homeland Security (DHS) served Sene with a notice to appear in removal proceedings, alleging that she was admitted to the United States on December 20, 2000, without a valid entry or travel document and charging that she was subject to removal as an alien who was not in possession of a valid entry or travel document at the time of entry.  *See* 8 U.S.C. §§ 1182(a)(7)(A)(i)(I), 1227(a)(1)(A).  Appearing before an immigration judge (IJ), Sene admitted the factual allegations set forth in the notice to appear and conceded removability as charged.

At the merits hearing, Sene testified that her parents were born in Senegal but were living in Mauritania when she was born in 1980.  When she was five or six years old, Sene's father took her to a village in Mauritania, where she was subjected to female genital mutilation (FGM).  Sene further testified that, when she was ten years old, Mauritanian military personnel came to her house, loaded her family onto military trucks, and took them to military barracks.  Sene was detained for twenty-five days, during which time she was questioned, beaten, and forced to work.  One night, three soldiers undressed her, tied her legs and hands, and raped her.  The next morning, Sene was forced to cross the river into Senegal, where she told Red Cross personnel about what happened to her.  After staying in a hospital for four days, Sene and her mother went to a refugee camp.  They eventually moved to Dakar, where Sene found a job as a babysitter and maid.  Sene testified that she lived in Senegal for eleven years with no problems and that she left

for the United States in 2001 for a job opportunity. Sene married her husband in 2004, and they had a daughter in 2005. Sene testified that she did not have any fear of returning to Senegal until she received a letter from her husband's father or grandfather, stating that he hoped that when Sene's daughter turned two, "you will be sending her to us, so we can have her circumcised, as required by the African tradition." (AR 526-27). Sene testified that she wanted to protect her daughter and did not want her daughter to experience what she had experienced, asserting her fear that her husband's family might take her daughter and subject her to FGM.

At the conclusion of the hearing, the IJ denied Sene's applications for relief and ordered her removal to Senegal or, in the alternative, Mauritania. The IJ denied Sene's asylum application as untimely to the extent that it was based on her own alleged persecution. The IJ found that Sene's asylum application was timely filed with respect to her fear that her daughter might be subject to FGM. The IJ determined that, while Sene's experiences in Mauritania constituted serious persecution, evidence submitted by the DHS showed changed conditions in Mauritania, rebutting the presumption that she would face future persecution there on account of her race. Because FGM is a one-time harm, the IJ stated, Sene no longer had a well-founded fear of persecution on that ground. The IJ found that Sene had not suffered past persecution in Senegal and that her fear that her daughter might be subject to FGM in Senegal was not objectively reasonable. The IJ further determined that the record did not show a risk of torture to Sene in either Senegal or Mauritania.

On appeal, the BIA agreed that Sene's asylum application as it related to her own alleged persecution was untimely and, on that basis, denied her motion to remand to pursue a claim for humanitarian asylum. The BIA affirmed the IJ's denial of Sene's applications for asylum and withholding of removal based on her claimed fear that her daughter would be subject to FGM in Senegal. The BIA went on to note that, in denying Sene's claims based on her own FGM, the IJ relied on a decision that had since been vacated in relevant part by the Attorney General. *See In re A-T-*, 24 I. & N. Dec. 296 (BIA 2007), *vacated*, 24 I. & N. Dec. 617 (Att'y Gen. 2008). The BIA also took administrative notice of a recent Department of State Country Report on Human Rights Practices indicating that "a military coup occurred in Mauritania on August 6, 2008, followed by a deterioration in the human rights situation." (AR 256). Accordingly, the BIA

remanded Sene's case for reconsideration of her applications for withholding of removal and CAT protection.

On remand, Sene submitted additional documents and provided further testimony regarding the ongoing effects of her FGM. In a written decision, the IJ denied Sene's applications for withholding of removal and CAT protection and ordered her removal to Senegal. The IJ found that Sene's experiences in Mauritania rose to the level of serious persecution but that the DHS met its burden to rebut the presumption that she would be persecuted if she returned to Mauritania. As for Senegal, the IJ found that Sene failed to demonstrate past persecution in light of her testimony that she lived there without harm for approximately eleven years and that she failed to meet her burden of demonstrating that her life or freedom would be threatened in the future there. The IJ further determined that Sene failed to demonstrate that she would be subject to torture if she were removed to Mauritania or Senegal.

Sene appealed the IJ's decision. Given that the IJ ordered Sene's removal to Senegal only, the BIA declined to address Sene's claims with respect to Mauritania. With respect to Senegal, the BIA affirmed the IJ's findings that Sene failed to establish eligibility for withholding of removal or CAT protection. This timely petition for review followed.

Where, as here, "the BIA reviews the immigration judge's decision and issues a separate opinion, rather than summarily affirming the immigration judge's decision, we review the BIA's decision as the final agency determination." *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). We review the agency's factual findings for substantial evidence, reversing only if "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see Khalili*, 557 F.3d at 435.

Sene contends that her FGM constitutes a permanent and continuing act of persecution, entitling her to withholding of removal. By failing to address her other grounds for relief, Sene has waived those issues. *See Cruz-Samayoa v. Holder*, 607 F.3d 1145, 1155 (6th Cir. 2010). Withholding of removal is mandatory if the alien establishes that her "life or freedom would be threatened in [the proposed country of removal] because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A); *see*

*Khalili*, 557 F.3d at 435. If an applicant for withholding of removal "is determined to have suffered past persecution in the proposed country of removal on account of" a protected ground, "it shall be presumed that the applicant's life or freedom would be threatened in the future in the country of removal on the basis of the original claim." 8 C.F.R. § 1208.16(b)(1)(i). In the absence of such a presumption, the alien "must establish a 'clear probability of persecution,' meaning that 'it is more likely than not that the alien would be subject to persecution.'" *Al-Ghorbani v. Holder*, 585 F.3d 980, 993-94 (6th Cir. 2009) (quoting *INS v. Stevic*, 467 U.S. 407, 413, 424 (1984)).

Sene relies on *Mohammed v. Gonzales*, 400 F.3d 785 (9th Cir. 2005), in which the Ninth Circuit held that FGM is "a 'permanent and continuing' act of persecution" and that "the presumption of well-founded fear in such cases cannot be rebutted." *Id*. at 801. The Ninth Circuit stated that "persecution in the form of female genital mutilation is similar to forced sterilization, and like that other persecutory technique, must be considered a continuing harm that renders a petitioner eligible for asylum, without more." *Id*. at 799. The *Mohammed* case is inapposite. Here, while Sene was subjected to FGM and other forms of persecution in Mauritania, she suffered no harm in Senegal, the proposed country of removal. Because Sene did not suffer past persecution in Senegal, no presumption arose in her favor for the DHS to rebut. Furthermore, this court has questioned the soundness of the *Mohammed* decision's analogy to forced sterilization, pointing out that "Congress specifically defined the term 'refugee' to include victims of forced sterilization" and that "[n]o equivalent 'shortcut' to refugee status applies to those subjected to FGM." *Diallo v. Mukasey*, 268 F. App'x 373, 380 (6th Cir. 2008).

Substantial evidence supports the BIA's determination that Sene failed to show that it is more likely than not that she would be subject to persecution in Senegal, "where the country reports indicate that FGM is a criminal offense that is not commonly committed against adult women and the record likewise does not support her fear of any other form of harm." (AR 5). *See Dieng v. Holder*, 698 F.3d 866, 873-74 (6th Cir. 2012) (holding that a fear of FGM of an adult woman who "has effectively 'aged out' of the threat of FGM in Senegal" did not support a

claim for asylum, let alone withholding of removal). Accordingly, we **DENY** Sene's petition for review.

———————————

**CONCURRENCE**

———————————

STRANCH, Circuit Judge, concurring.   The dissent raises thoughtful and persuasive points as to the lasting harm caused by female genital mutilation.  I can agree with the Ninth Circuit's analysis in *Mohammed v. Gonzales*, 400 F.3d 785, 795 (9th Cir. 2005), that female genital mutilation is a permanent and continuing act of persecution, which would make the presumption of well-founded fear in Sene's case unrebuttable.  But even if we chose to use the reasoning in *Mohammed*, the unrebuttable presumption would not apply in Sene's case because the harm against her occurred in Mauritania but she is being removed to Senegal.  Though the record shows, as the dissent aptly points out, that female genital mutilation also occurs in Senegal, it appears that the well-founded fear analysis is country-specific.  *See, e.g., Berri v. Gonzales*, 468 F.3d 390, 396 (6th Cir. 2006) ("As an initial matter, anything that happened in Kuwait is irrelevant to this proceeding because the [petitioners] are to be sent back to Lebanon, not Kuwait."); 8 C.F.R. § 1208.16(b)(1)(i) (regulation stating that the presumption arises if "the applicant is determined to have suffered past persecution in the proposed country of removal").  Moreover, the Immigration Judge and Board of Immigration Appeals each analyzed the presumption of well-founded fear for Mauritania and Senegal separately.  Sene has not shown that she suffered past persecution in Senegal and so has failed to raise the presumption of well-founded fear.

I note that Sene has waived her appeal on a number of issues by failing to address these arguments on appeal.  *See Cruz-Samayoa v. Holder*, 607 F.3d 1145, 1155 (6th Cir. 2010) (stating that "[i]n failing to assert any argument challenging" an agency's determination, the petitioners had waived the argument); *Bi Feng Liu v. Holder*, 560 F.3d 485, 489 n.4 (6th Cir. 2009) ("[A]n issue that is not raised in a party's briefs may generally be deemed waived.").  Importantly, Sene did not raise the denial of her claim for relief from removal based on her fear that her daughter would be subjected to female genital mutilation.  I think Sene's fear that her daughter could be subject to female genital mutilation in Senegal could very well be a viable claim: it is decidedly a claim that generates realistic fear as well as genuine concern that the terrible legacy of female

genital mutilation not be borne by another generation of women.  Had that issue been before us, we would have examined whether Sene's petition could be granted based on her fear.  *See Abay v. Ashcroft*, 368 F.3d 634, 642 (6th Cir. 2004) (reversing the BIA's denial of an asylum petition for a mother who feared her child would be subject to female genital mutilation if removed to Ethiopia, because an "alien need not prove that she would take the child with her as part of her burden to demonstrate eligibility for relief, if she has custody of the child.") (citing *Matter of Dibba*, No. A73 541 857 (BIA Nov. 23, 2001)).  But because that issue is not before us, I concur with the lead opinion.

---

**DISSENT**

---

BERNICE B. DONALD, dissenting.  I write separately to express my disagreement with the outcome of this case.  The harmful and everlasting effects of female genital mutilation have been universally recognized.  Female genital mutilation "is 'a horrifically brutal procedure, often performed without anesthesia[,]' that causes both short-term and long-term physical and psychological consequences."  *Mohammed v. Gonzales*, 400 F.3d 785, 795 (9th Cir. 2005) (quoting *Nwaokolo v. INS*, 314 F.3d 303, 308 (7th Cir. 2002)).  "The practice has been internationally recognized as a violation of the rights of women and girls."  *Id*.  Because the decision here trivializes the devastating effects of this form of mutilation, I respectfully dissent.

Initially, I disagree with the rejection of Sene's argument that female genital mutilation is a permanent and continuing act of persecution.  The reasoning of the Ninth Circuit is persuasive, and should be instructive to our decision.  In *Mohammed*, the Ninth Circuit found that "persecution in the form of female genital mutilation is similar to forced sterilization and, like that other persecutory technique, must be considered a continuing harm that renders a petitioner eligible for asylum, without more."  400 F.3d at 799.  The court went on to analogize female genital mutilation to sterilization saying: "[l]ike forced sterilization, genital mutilation permanently disfigures a woman, causes long term health problems, and deprives her of a normal and fulfilling sexual life."  *Id*.  This continuing and permanent effect of female genital mutilation is clearly supported by the facts of this case, and many more like it, where the victim suffers from emotional and psychological trauma stemming from the mutilation well into her adulthood.  Despite this Court's initial questioning of "[t]he soundness of the decision in *Mohammed*," *Diallo v. Mukasey*, 268 F. App'x 373, 380 (6th Cir. 2008), we nevertheless stated that we would not reach the issue in that case because the argument was not properly before the Court.  *Id*.  That decision should not control the outcome in this case.

Furthermore, I believe that it is irrelevant that Sene's persecution did not occur in Senegal, but in Mauritania.  Because the act of female genital mutilation, and more importantly,

the resulting harm, is the same whether the mutilation was performed in Mauritania, Senegal, or any other practicing country, the presumption of a well-founded fear should control where the fear is of being deported to a country that still practices female genital mutilation. It is even further irrelevant that female genital mutilation has been ruled unlawful in Senegal, in the face of evidence that the practice still occurs within the country. According to the evidence presented to the Immigration Judge, despite the fact that female genital mutilation is a criminal offense in Senegal, it is still being practiced, and reports show that the procedure was imposed on approximately twenty-six percent of young girls in 2011.

Finally, even in the absence of an unrebutted fear of future persecution, Sene may still be entitled to asylum under the humanitarian exception. *See Mukasey*, 268 F. App'x at 384 (Moore, J., dissenting). Under this exception, "[t]he decision-maker may grant asylum if: (1) the petitioner has shown 'compelling reasons for being unwilling or unable to return to the country arising out of the severity of the past persecution; or' (2) the petitioner has shown 'that there is a reasonable possibility that he or she may suffer other serious harm upon removal to that country.'" *Id*. (quoting 8 C.F.R. § 208.13(b)(1)(iii)(A)–(B). The record fully demonstrates that Sene's persecution in the form of being forced to undergo female genital mutilation was severe; the record is equally clear that the effects of this persecution have been severe and lasting. I would hold that this well-documented severity entitles Sene to consideration for asylum under the humanitarian exception.

I believe that female genital mutilation is a permanent and continuing act of persecution that entitles a petitioner to a rebuttable presumption that there is an inherent well-founded fear of future prosecution, and that this presumption is not rebutted merely by the fact that the petitioner has essentially "aged out" of the harm. Because I think that the government in this case has not met its burden of rebutting this presumption, I would grant Sene's petition for review.